**WARNING: AT LEAST ONE DOCUMENT COULD NOT BE INCLUDED!**
**You were not billed for these documents.**
**Please see below.**

| Document Number | Document Description | Pages | Document Error |
|---|---|---|---|
| Document 1 attachment | Attachment | 2 | **DOCUMENT COULD NOT BE RETRIEVED! However, it may still be viewable individually.** |
| Document 1 attachment | Attachment | 2 | **DOCUMENT COULD NOT BE RETRIEVED! However, it may still be viewable individually.** |

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,           )
                                     )
        v.                           )      Civil No. 6:21-cv-63
                                     )
KARINA SALGADO WILLIAMS;             )
SHAQUIVIA BIVINS; SHASHA CRUZ;       )
NIKITA WILLIAMS; GENESIS PABON;      )
JAZMIN SALGADO; SALGADO TAX AND      )
REPO LLC; UNITED TAX FINANCIAL       )
SOLUTIONS LLC; SALGADO TAX AND       )
NOTARY SERVICES LLC; K&T LOYAL       )
TAX SERVICES LLC; and JAZMIN         )
SALGADO LLC,                         )
                                     )
                Defendants.          )

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

The United States of America, for its complaint against Karina Salgado Williams,

Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax

and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC,

K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, alleges the following:

1.      This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams,

Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions

LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin

Salgado LLC, and anyone in active concert or participation with them, from:

> a.  acting as federal tax return preparers or requesting, assisting in, or
>     directing the preparation or filing of federal tax returns, amended
>     returns, or other related documents or forms for any person or entity
>     other than themselves;

1

b.  preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

c.  owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

d.  training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

e.  maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

f.  engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

g.  engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to disgorge to the United States the ill-gotten gains that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC received (in the form of tax preparation fees) for the preparation of federal tax returns making false and/or fraudulent claims.

**Authorization**

2.      This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

**Jurisdiction and Venue**

3.      Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the defendants reside in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

**Defendants**

5.      Karina Salgado Williams resides in Orlando, Florida, and is the sister of Genesis Pabon and Jazmin Salgado.  She has been preparing tax returns for others since at least 2010.  In addition to preparing tax returns, Karina Salgado Williams employs, and has employed, one or more persons who prepare tax returns.

6.      Shaquivia Bivins resides in Ocoee, Florida.  She has been preparing tax returns for others since at least 2019.  In addition to preparing tax returns, Bivins employs, and has employed, one or more persons who prepare tax returns.

7.      Shasha Cruz resides in Kissimmee, Florida.  She has been preparing tax returns for others since at least 2010.

8.      Nikita Williams resides in Orlando, Florida.  She has been preparing tax returns for others since at least 2018.

3

9.    Genesis Pabon resides in Orlando, Florida, and is the sister of Karina Salgado Williams and Jazmin Salgado. She has been preparing tax returns for others since at least 2018. In addition to preparing tax returns, Pabon employs, and has employed, one or more persons who prepare tax returns.

10.    Jazmin Salgado resides in Orlando, Florida, and is the sister of Karina Salgado Williams and Genesis Pabon. She has been preparing tax returns for others since at least 2011. In addition to preparing tax returns, Salgado employs, and has employed, one or more persons who prepare tax returns.

11.    On or about October 5, 2016, Karina Salgado Williams incorporated Salgado Tax and Repo LLC in Florida. Karina Salgado Williams is identified (as "Karina Salgado") as the sole person authorized (listed as "MBR") to manage Salgado Tax and Repo LLC, and the registered agent of Salgado Tax and Repo LLC. Salgado Tax and Repo LLC employs, and has employed, one or more persons who prepare tax returns.

12.    On or about November 30, 2018, Karina Salgado Williams incorporated United Tax Financial Solutions LLC in Florida. Karina Salgado Williams is identified (as "Karina Williams") as the sole person authorized (listed as "MGR") to manage United Tax Financial Solutions LLC. United Tax Financial Solutions LLC employs, and has employed, one or more persons who prepare tax returns.

13.    On or about November 12, 2019, Genesis Pabon incorporated Salgado Tax and Notary Services LLC in Florida. Genesis Pabon is identified as the manager of Salgado Tax and Notary Services LLC. On or about November 27, 2019, Genesis Pabon amended the Articles of Organization of Salgado Tax and Notary Services LLC to add Karina Salgado Williams (identified as "Karina Williams") as an Authorized Member of Salgado Tax and Notary Services

LLC.  Salgado Tax and Notary Services LLC employs, and has employed, one or more persons who prepare tax returns.

14.     On or about December 20, 2018, Shaquivia Bivins incorporated K&T Loyal Tax Services LLC in Florida.  Shaquivia Bivins is identified as an authorized representative and the registered agent of K&T Loyal Tax Services LLC.  K&T Loyal Tax Services LLC employs, and has employed, one or more persons who prepare tax returns.

15.     On or about August 15, 2011, Jazmin Salgado incorporated Jazmin Salgado LLC in Florida.  Salgado is identified as the sole person authorized (listed as "MGR") to manage Jazmin Salgado LLC, and the registered agent of Jazmin Salgado LLC.  Tax returns prepared by Jazmin Salgado and/or Jasmin Salgado LLC frequently identify the paid preparation firm as "United Tax Services."  Jasmin Salgado LLC employs, and has employed, one or more persons who prepare tax returns.

### Background

16.     LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette.

17.     In 2009, Karina Salgado Williams began working as a receptionist at an LBS store owned by Jean Demesmin.  Subsequently, Karina Salgado Williams began to prepare tax returns for customers at an LBS store in Apopka, Florida owned by Demesmin and managed by Tonya Chambers.

18.     In 2010, Jazmin Salgado began working as a receptionist at an LBS store in Apopka, Florida.  In 2011, Salgado became the manager of an LBS store in Clermont, Florida.

19.     In 2009, Shasha Cruz began working at an LBS store in Orlando, Florida, owned by Gachette.  In 2010 or 2011, Cruz began working as a tax return preparer with Karina Salgado Williams at LBS.

20.     While working at LBS, Karina Salgado Williams, Jazmin Salado, and Cruz learned how to prepare tax returns in an improper manner to generate bogus refunds (such as preparing tax returns making false claims on Forms Schedule A and C and claiming falsely inflated or fabricated Earned Income Tax Credits).

21.     In 2016, the United States District Court for the Middle District of Florida enjoined Gachette, Demesmin, and Chambers from preparing federal tax returns and owning, operating, and franchising a tax preparation business.  *See United States v. Walner Gachette*, 6:14-cv-1539-ACC-TBS (M.D. Fla.); *United States v. Jean Demesmin and Tonya Chambers*, 6:14-cv-1537-ACC-TBS (M.D. Fla.).

22.     According to a letter dated March 9, 2011, signed by Tonya Chambers (identified as Tonya Rivera) and addressed to Karina Salgado Williams (identified as Karina Salgado), Chambers terminated Karina Salgado Williams' employment at LBS because she "fabricated false w2's using LBS's EIN number" and "had customers [sic] tax refunds deposited in [her] bank account." According to the letter, Karina Salgado Williams refused to sign the termination letter. On or about October 26, 2011, Karina Salgado Williams incorporated KG Tax Services & More LLC (a now-inactive entity) with the State of Florida.

23.     On or about December 11, 2013, Karina Salgado Williams and her sister, Jazmin Salgado, started a tax preparation business called United Tax Services and More LLC, a now-defunct entity which they operated together through 2015.  Karina Salgado Williams

subsequently incorporated Salgado Tax and Repo LLC and United Tax Financial Solutions LLC, through which she owns and operates a tax preparation business.

24.     Jazmin Salgado started her own tax preparation business in 2016, operating through Jazmin Salgado LLC and doing business as United Tax Services. Salgado continues to own and operate this tax preparation business.

25.     Since 2016, Cruz has prepared tax returns for compensation while working for Karina Salgado Williams at Salgado Tax & Repo LLC and United Tax Financial Solutions LLC, and while working for Karina Salgado Williams and Genesis Pabon at Salgado Tax and Notary Services LLC.

26.     Since 2018, Nikita Williams has prepared tax returns for compensation, working for Karina Salgado Williams at United Tax Financial Solutions LLC, and for Karina Salgado Williams and Genesis Pabon at Salgado Tax and Notary Services LLC.

27.     Since 2019, Bivins has prepared tax returns for compensation, working for Karina Salgado Williams at United Tax Financial Solutions LLC.

28.     Since 2020, Pabon has prepared tax returns for compensation along with Karina Salgado Williams at their business Salgado Tax and Notary Services LLC.

29.     Karina Salgado Williams provided training to tax preparers at Salgado Tax & Repo LLC, United Tax Financial Solutions LLC, and Salgado Tax and Notary Services LLC. Karina Salgado Williams trained tax return preparers at Salgado Tax & Repo LLC, United Tax Financial Solutions LLC, and Salgado Tax and Notary Services LLC to prepare tax returns in the same improper manner taught to Karina Salgado Williams at LBS Tax Services.

30.     Karina Salgado Williams reviewed all tax returns prepared at Salgado Tax & Repo LLC, United Tax Financial Solutions LLC, and Salgado Tax and Notary Services LLC before they were filed with the IRS.

31.     On December 17, 2018, the United States filed suit against Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC (Erotida Harden's tax preparation business), seeking to enjoin them from owning or operating a tax preparation business and preparing tax returns for others. *See United States v. Erotida Harden*, 6:18-cv-2148-CEM-DCI (M.D. Fla.).  On December 19, 2018, the United States moved for the entry of a temporary restraining order and preliminary injunction against the defendants in that case; the Court issued a temporary restraining order on December 21, 2018, and a preliminary injunction on January 7, 2019.  Later in 2019, the Court entered permanent injunctions against the defendants in that case. After December 21, 2018, those defendants were barred from preparing tax returns, and also transferring any customer list, customer information, or proprietary information pertaining to their tax preparation business to any other individual or entity.

32.     After the temporary restraining order and preliminary injunction were entered in the *Harden* lawsuit, a plurality of the customers of Certified Taxes engaged the Defendants to prepare their 2018 federal income tax returns.  As noted in the *Harden* complaint, the IRS identified 1,621 tax returns prepared at Certified Taxes in 2018.  In 2019, 242 of these customers had their tax returns prepared at United Tax Financial Solutions, LLC; Karina Salgado Williams was identified as the preparer of 151 of these tax returns; Shasha Cruz was identified as the preparer of 85 of these tax returns; and Shaquivia Bivins was identified as the preparer of 6 of these tax returns.  To provide further context, in 2019, no other single tax preparer prepared

8

returns for more than 24 individuals who previously had their tax returns prepared at Certified Taxes in 2018.

## The Defendants' Activities

33.     The Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury.

34.     Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf. For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

35.     The Defendants, and those acting at their direction or with their knowledge and consent, make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds. After completing the returns, the Defendants falsely tell the customers that these forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed. The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

36.     The Defendants, and those acting at their direction or with their knowledge and consent, request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

37.     The Defendants engage in unlawful tax return preparation practices including:

   a.     Making false claims for the Earned Income Tax Credit;

   b.     Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

   c.     Fabricating businesses and related business income and expenses reported on Forms Schedule C;

   d.     Fabricating itemized deductions, including for unreimbursed employee business expenses and charitable contributions, reported on Forms Schedule A;

   e.     Claiming personal and other non-deductible expenses as adjustments to income on Forms Schedule 1;

   f.     Improperly claiming false filing status, such as Head of Household;

   g.     Claiming education credits to which their customers are not entitled;

   h.     Failing to identify the actual paid preparer of the tax return;

   i.     Failing to provide customers with a copy of the completed tax return; and

   j.     Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

38.     The Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns that include fraudulent claims for the Earned Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or improperly-claimed dependents, and/or false filing status.

39.     The EITC is a refundable tax credit available to certain low-income working people. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents.  Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S. Treasury.

40.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. The amount of the credit increases as income increases between $1 and a set income amount, and decreases as income increases beyond another higher set income amount.  For example, in tax year 2018 the maximum EITC was $6,431 and was available to eligible individuals with three dependent children who earned income between $14,250 and $18,700.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

41.     Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit. Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

42.     The Defendants, and those acting at their direction or with their knowledge and consent, falsify information to claim the maximum EITC for customers.  For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants, and those acting at their direction or with their knowledge and consent, inflate or fabricate business income reported on a Form Schedule C,

"Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

43.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers.  These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not ignore the implications of information furnished to (or known by) the tax return preparer, and the tax return preparer must make reasonable inquiries if a reasonable and well-informed tax return preparer knowledgeable in the law would conclude that the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete.  Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

44.     In 2018, the IRS investigated whether Salgado complied with the due diligence requirements when preparing tax returns.  The IRS reviewed 50 tax year 2017 tax returns that Salgado prepared in 2018, reviewed the related customer files, and interviewed Salgado. The IRS determined that Salgado failed to comply with the due diligence requirements when preparing 48 of the 50 reviewed tax returns. The IRS assessed penalties against Salgado in the amount of $48,960 for 96 violations of 26 U.S.C. § 6695(g) related to claiming the Earned Income Tax Credit and child tax credits without meeting the due diligence requirements.

45.     The Defendants, and those acting at their direction or with their knowledge and consent, fail to comply with the due diligence requirements.  The Defendants, and those acting at

12

their direction or with their knowledge and consent, show an intentional disregard for the tax laws and in particular for the due diligence requirements.

## Fabricated Schedule C Business Income and Expenses

46.     The Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns reporting non-existent businesses on Forms Schedule C. On some of these returns, the Defendants, and those acting at their direction or with their knowledge and consent, report substantial business income, but little or no expenses. On other returns, the Defendants, and those acting at their direction or with their knowledge and consent, report substantial expenses, but little or no income. The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

47.     Since 2016, of the 1,684 tax returns prepared and filed with an Electronic Filing Identification Number ("EFIN") associated with Karina Salgado Williams, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, or K&T Loyal Tax Services LLC, 565 (or 34%) of the tax returns include a Form Schedule C. Of these 565 tax returns, 484 also claim the Earned Income Tax Credit.

48.     Since 2016, of the 1,322 tax returns prepared and filed with an EFIN associated with Jazmin Salgado or Jazmin Salgado LLC, 454 (or 34%) of the tax returns include a Form Schedule C. Of these 454 tax returns, 375 also claim the Earned Income Tax Credit.

**Customer 1**

49.     For example, Karina Salgado Williams prepared the 2018 federal income tax return of Customer 1 of Orlando, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.

50.     Customer 1 was employed at a nursing home in 2018 and lived with her husband, whose tax return was filed separately. Customer 1 provided Karina Salgado Williams with a copy of her last pay stub at the time the tax return was prepared. Customer 1 did not own or operate a business in 2018. Customer 1 also received social security income in 2018.

51.     On the Schedule C attached to the tax return, Karina Salgado Williams falsely claimed that Customer 1 owned a "Food" business that incurred a $19,905 loss in 2018. Karina Salgado Williams falsely claimed that Customer 1's non-existent business received $2,365 in gross receipts or sales, incurred $720 in expenses for costs of goods sold, and incurred additional expenses totaling $21,550, including $16,743 in car and truck expenses, $1,200 for insurance, $3,457 for repairs and maintenance, and $150 in deductible meal expenses. Customer 1 did not know that Karina Salgado Williams reported this non-existent business and related expenses on her tax return. Karina Salgado Williams also failed to report Customer 1's income from social security and, as discussed in paragraph 172, *infra*, falsely reported Customer 1's filing status as head of household. By reporting this fabricated loss and improper filing status, Karina Salgado Williams fraudulently reduced Customer 1's taxable income to zero and claimed a bogus EITC in the amount of $3,461 and a bogus refund in the amount of $7,845 on Customer 1's 2018 tax return.

**Customer 2**

52.     Karina Salgado Williams prepared the 2018 federal income tax return of Customer 2 of Orlando, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.

53.     Customer 2 was employed as a sales representative in 2018 and provided Karina Salgado Williams with a copy of his Form W-2 at the time the tax return was prepared. Customer 2 did not own or operate a business in 2018. Karina Salgado Williams asked Customer 2 how far he drove to and from his job, how much he spent on gasoline for his car, and whether he incurred any car repair expenses.  Customer 2 told Karina Salgado Williams that he drove less than 30 miles round trip to and from his job, and that he spent around $1,000 on car repairs.

54.     On the Schedule C attached to the tax return, Karina Salgado Williams falsely claimed that Customer 2 owned a "Landscaping" business that incurred a $27,547 loss in 2018. Karina Salgado Williams falsely claimed that Customer 2's non-existent business did not receive any gross receipts, but incurred expenses including $19,415 in car and truck expenses, $7,332 for renting business property, and $800 for repairs and maintenance.  Customer 2 did not know that Karina Salgado Williams reported this non-existent business and related expenses on his tax return.  Karina Salgado Williams did not review the completed tax return with Customer 2 and did not provide him with a complete copy of his tax return.

55.     By reporting this fabricated loss, Karina Salgado Williams fraudulently claimed a bogus EITC in the amount of $2,588 and a bogus refund in the amount of $7,685 on Customer 2's 2018 tax return.

**Customer 3**

56.     Karina Salgado Williams prepared the 2018 federal income tax return of Customer 3 of Orlando, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.  The tax return falsely reports that Shasha Cruz prepared the return.

57.     Customer 3 was employed as a health insurance enrollment manager in 2018 and provided Karina Salgado Williams with a copy of her Form W-2, mortgage statement, electric and cable bills, birth certificates of her children, and social security cards for herself and her children. Customer 3 did not own or operate a business in 2018. Customer 3 did not provide Karina Salgado Williams with copies of school or medical records for her children, as falsely reported on Customer 3's tax return.

58.     On the Schedule C attached to the tax return, Karina Salgado Williams falsely claimed that Customer 3 owned a business that incurred a $21,504 loss in 2018. Karina Salgado Williams falsely claimed that Customer 3's non-existent business did not receive any gross receipts, but incurred expenses totaling $22,054, including $4,632 for insurance, $9,804 for renting business property, $2,400 for supplies, and $5,218 for utilities.  Customer 3 did not know that Karina Salgado Williams reported this non-existent business and related expenses on her tax return.  Karina Salgado Williams asked Customer 3 about personal expenses, such as car insurance and utilities, which Karina Salgado Williams then falsely reported as business expenses on the tax return.  Karina Salgado Williams did not review the completed tax return with Customer 3.

59.     By reporting this fabricated loss, Karina Salgado Williams fraudulently claimed a bogus EITC in the amount of $3,249 and a bogus refund in the amount of $10,079 on Customer 3's 2018 tax return.

**Customer 4**

60.     Karina Salgado Williams prepared the 2018 federal income tax return of Customer 4 of Winter Haven, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.

61.     Customer 4 was employed as a nurse in 2018 and provided Karina Salgado Williams with a copy of her Form W-2. Customer 4 did not own or operate a business in 2018.

62.     On the Schedule C attached to the tax return, Karina Salgado Williams falsely claimed that Customer 4 owned a janitorial business that incurred a $22,618 loss in 2018. Karina Salgado Williams falsely claimed that Customer 4's non-existent business received $1,236 in sales or gross receipts, and incurred expenses totaling $23,854, including $1,658 for advertising, $1,800 for insurance, $2,415 for office expenses, $8,544 for renting or leasing vehicles, machinery, and equipment, $3,652 for repairs and maintenance, and $5,685 for supplies. Customer 4 did not know that Karina Salgado Williams reported this non-existent business and related expenses on her tax return. Karina Salgado Williams did not review the completed tax return with Customer 4.

63.     By reporting this fabricated loss, Karina Salgado Williams fraudulently claimed a bogus EITC in the amount of $4,163 and a bogus refund in the amount of $10,916 on Customer 4's 2018 tax return.

**Customer 5**

64.     Karina Salgado Williams is identified as the preparer the 2018 federal income tax return of Customer 5 of Orlando, Florida. Customer 5 communicated with the preparer over the telephone, after being told that the person who prepared her prior year tax return (Michael

Harden at Certified Taxes) was not at work that day because he was sick. In reality, Michael Harden and Certified Taxes were enjoined from preparing tax returns.

65.    Customer 5 was employed as a teacher in 2018 and sent the preparer a photograph of her Form W-2. Customer 5 did not own or operate a business in 2018, was not asked whether she owned a business, and did not tell the preparer that she owned a business.

66.    On the Schedule C attached to the tax return, the preparer falsely claimed that Customer 5 owned a "make up artist" business that incurred a $10,263 loss in 2018. The preparer falsely claimed that Customer 5's non-existent business did not receive any sales or gross receipts, but incurred expenses including $550 for advertising, $7,200 for renting business property, and $2,513 for utilities.  Customer 5 did not know that the preparer reported this non-existent business and related expenses on her tax return.  The preparer did not review the completed tax return with Customer 5 and did not provide Customer 5 with a copy of her completed 2018 tax return.

67.    By reporting this fabricated business loss, the preparer fraudulently claimed a bogus EITC in the amount of $256 and a bogus refund in the amount of $1,508 on Customer 5's 2018 tax return.

**Customer 6**

68.    Karina Salgado Williams prepared the 2018 federal income tax return of Customer 6 of Orlando, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.  Customer 6 provided Karina Salgado Williams with copies of her Form W-2 and her daughter's social security card.

69.    Customer 6 was employed as a teacher in 2018 and provided Karina Salgado Williams with a copy of her Form W-2. Customer 6 also sold boiled peanuts at stadium sports

tailgating events.  Karina Salgado Williams questioned Customer 6 about expenses she incurred for her vehicle.  Customer 6 told Karina Salgado Williams that she spent around $6,000 to replace the motor and transmission and replace her tires.

70.     On the Schedule C attached to the tax return, Karina Salgado Williams falsely claimed that Customer 6 received $2,938 in sales or gross receipts for selling boiled peanuts, and incurred expenses totaling $21,649, including $12,163 for car and truck expenses and $9,486 for supplies.  Customer 6 did not incur the claimed expenses and did not provide these fabricated amounts to Karina Salgado Williams.  As a result of the fabricated expenses, Karina Salgado Williams claimed a phony loss in the amount of $18,711.  Karina Salgado Williams also reported on the tax return that Customer 6's dependent was a "son," rather than her daughter; the copy of the tax return that Customer 6 received also did not report her daughter's correct social security number.  Karina Salgado Williams did not review the completed tax return with Customer __.

71.     By reporting this fabricated business loss, Karina Salgado Williams fraudulently claimed a bogus EITC in the amount of $111 and a bogus refund in the amount of $3,163 on Customer 6's 2018 tax return.

72.     When the IRS contacted Customer 6 to discuss this tax return, Karina Salgado Williams sent text messages to Customer 6 instructing Customer 6 not to speak with any IRS employees.

### Customer 7

73.     Karina Salgado Williams prepared the 2018 federal income tax return of Customer 7 of Kissimmee, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.  The tax return falsely reports that Shaquivia Bivins prepared the return.

19

74.     Customer 7 was employed as a patient service representative in 2018 and provided Karina Salgado Williams with a copy of her Form W-2, driver's license, and her son's daycare information.  Karina Salgado Williams did not ask Customer 7 any other questions about her son, including where he resided and who provided the majority of his support, contrary to the information Karina Salgado Williams falsely reported on the tax return.

75.     Customer 7 did not own or operate a business in 2018 and did not discuss owning a business with Karina Salgado Williams.  On the Schedule C attached to the tax return, Karina Salgado Williams falsely reported that Customer 7 owned a "beautician" business that incurred an $11,666 loss in 2018. Karina Salgado Williams falsely claimed that Customer 7's non-existent business received $400 in gross receipts or sales, and incurred expenses totaling $12,066, including $100 for advertising, $8,966 for car and truck expenses, $2,000 for renting or leasing business property, and $1,000 for supplies.  Customer 7 did not know that Karina Salgado Williams reported this non-existent business and related expenses on her tax return. Karina Salgado Williams did not review the completed tax return with Customer 7 and did not tell Customer 7 how much she would be charged to have the tax return prepared.

76.     By reporting this fabricated loss, Karina Salgado Williams fraudulently claimed a falsely inflated EITC in the amount of $2,132 and a bogus refund in the amount of $6,116 on Customer 7's 2018 tax return.

### Customer 8

77.     Genesis Pabon prepared the 2019 federal income tax return of Customer 8 of Kissimmee, Florida, at the Salgado Tax and Notary Services office at 989 West Kennedy Blvd., Orlando, Florida.

78.     Customer 8 was employed as a customer service representative in 2019, and received wages totaling $34,753.  Pabon asked Customer 8 whether she owned or operated a business, and Customer 8 informed Pabon that she did not own or operate a business in 2019.

79.     On the Schedule C attached to the tax return, Pabon falsely claimed that Customer 8 owned a hairstyling business that incurred a $12,848 loss in 2019. Pabon falsely claimed that Customer 8's non-existent business received $2,695 in sales or gross receipts, and incurred $15,543 in expenses including $11,812 for car and truck expenses, $1,908 for renting or leasing business property, $478 for supplies, and $1,345 for utilities.  Customer 8 did not know that Pabon reported this non-existent business and related expenses on her tax return, as Pabon did not review the completed tax return with Customer 8.

80.     By reporting this fabricated business loss, Pabon fraudulently claimed an inflated EITC in the amount of $5,218 and a bogus refund in the amount of $9,322 on Customer 8's 2019 tax return.

**<u>Customer 9</u>**

81.     Genesis Pabon is identified as the preparer of the 2019 federal income tax return of Customer 9 of Orlando, Florida, at the Salgado Tax and Notary Services office at 989 West Kennedy Blvd., Orlando, Florida.

82.     Customer 9 was employed as a supermarket cashier in 2019, and received $4,338 in wages.  Customer 9 provided the preparer with a copy of her Form W-2, her ID, and social security information for herself and her children. Customer 9 did not own or operate any business in 2019, and did not discuss owning or operating a business with the preparer.

83.     On the Schedule C attached to the tax return, the preparer falsely claimed that Customer 9 owned a hairstyling business that earned income totaling $9,943 in 2019.  The

preparer falsely claimed that Customer 9's non-existent business received $10,632 in sales or gross receipts, and incurred expenses including $54 for advertising and $635 for supplies. Customer 9 did not know that the preparer reported this non-existent business on her tax return as the preparer did not review the completed tax return with Customer 9.

84.     By reporting this fabricated business income, along with an improper filing status, discussed in paragraphs 173 through 174, *infra*, the preparer fraudulently claimed a bogus EITC in the amount of $3,526 and a bogus refund in the amount of $3,721 on Customer 9's 2019 tax return.

### **Customer 10**

85.     Shaquivia Bivins is identified as the preparer of the 2018 federal income tax return of Customer 10 of Orlando, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.

86.     Customer 10 was employed as a hairstylist in 2018 and provided the preparer with a copy of her Form W-2. Although Customer 10 also styled hair on her own time, she did discuss any income she received or expenses she incurred for styling hair outside of her job. Customer 10 did not own or operate any cleaning business in 2018.

87.     On the Schedule C attached to the tax return, the preparer falsely claimed that Customer 10 owned a cleaning business that incurred a $6,788 loss in 2018. The preparer falsely claimed that Customer 10's non-existent business did not receive any sales or gross receipts, but incurred expenses including $100 for advertising, $6,188 for car and truck expenses, and $500 for supplies. Customer 10 did not know that the preparer reported this non-existent business and related expenses on her tax return and the preparer did not provide Customer 10 with a copy of

her completed 2018 tax return.  The preparer did not tell Customer 10 how much she was charged to have the tax return prepared.

88.     By reporting this fabricated business loss, the preparer fraudulently claimed a bogus EITC in the amount of $3,323 and a bogus refund in the amount of $6,604 on Customer 10's 2018 tax return.

**Customer 11**

89.     Shaquivia Bivins is identified as the preparer of the 2018 federal income tax return of Customer 11 of Orlando, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.

90.     Customer 11 was employed as a hairstylist in 2018 and provided the preparer with a copy of her Form W-2. The preparer asked Customer 11 questions about how much he spent on personal expenses in 2018.

91.     On the Schedule C attached to the tax return, the preparer falsely claimed that Customer 11 owned a landscaping business that incurred a $6,767 loss in 2018. The preparer falsely claimed that Customer 11's non-existent business received $600 in sales or gross receipts, and incurred expenses including $6,817 for car and truck expenses, $300 for repairs and maintenance, and $250 for supplies.  Customer 11 did not know that the preparer reported this business income and expenses on his tax return.

92.     By reporting this fabricated business loss, and claiming a bogus dependent, the preparer fraudulently claimed a bogus EITC in the amount of $3,270 and a bogus refund in the amount of $8,840 on Customer 11's 2018 tax return.

**Customer 12**

93.     Shasha Cruz is identified as the preparer of the 2018 federal income tax return of Customer 12 of Auburndale, Florida, at the United Tax Financial Solutions office at 132 E. Colonial Drive, Orlando, Florida.

94.     Customer 12 was employed at two jobs in 2018 and provided the preparer with copies of her Forms W-2. Customer 12 also provided the preparer with a copy of her son's social security card, birth certificate, and daycare information, but the preparer did not ask Customer 12 any other questions about her son. Customer 12 did not provide the preparer with any medical records pertaining to her son, contrary to what the preparer falsely claimed on the tax return.

95.     The preparer asked Customer 12 whether she earned any income outside of her jobs. Customer 12 told the preparer that she also styled hair occasionally, but the preparer did not ask any follow-up questions about the income Customer 12 earned or the expenses she incurred in connection with hairstyling.

96.     On the Schedule C attached to the tax return, the preparer falsely claimed that Customer 12 received $13,529 in gross receipts for hairstyling, and incurred $589 in expenses. Customer 12 did not earn this much through hairstyling, did not provide these amounts to the preparer, and did not know that the preparer reported this income and expenses on her tax return. The preparer did not review the completed tax return with Customer 12 and did not tell Customer 12 how much she was charged to have the return prepared.

97.     By reporting this fabricated business income, the preparer fraudulently claimed a falsely inflated EITC in the amount of $3,461 and a bogus refund in the amount of $4,033 on Customer 12's 2018 tax return.

**Customer 13**

98.     Jazmin Salgado prepared the 2018 federal income tax return of Customer 13 of Orlando, Florida, at the United Tax Services "office" located in a residential apartment at 6137 Westgate Drive, Orlando, Florida.

99.     Customer 13 was employed as a railroad contractor in 2018. Customer 13 provided Salgado with a copy of his Form W-2, Form 1098, driver's license, and social security card. Customer 13 did not own or operate a business in 2018.

100.    On the Schedule C attached to the tax return, Salgado falsely claimed that Customer 13 owned a business, identified as "Operating Manager RR," that incurred a $38,557 loss in 2018. Salgado falsely claimed that Customer 13's non-existent business did not receive any income or gross receipts, but incurred expenses including $25,144 in car and truck expenses, $6,657 for insurance, $3,900 in deductible meal expenses, and $2,856 for a cell phone.  Salgado questioned Customer 13 about his personal expenses for his cell phone and the amount of commuting mileage he drove to and from work, but Customer 13 did not know that Salgado reported this non-existent business and related expenses on his tax return.  By reporting this fabricated loss, Salgado fraudulently reduced Customer 13's taxable income and claimed a bogus refund in the amount of $3,305 on Customer 13's 2018 tax return.

**Customer 14**

101.    Jazmin Salgado prepared the 2018 and 2019 federal income tax returns of Customer 14 of Orlando, Florida.

102.    Customer 14 was employed as a shuttle driver in 2018 and 2019. Customer 14 did not own or operate a business in 2018 or 2019.

103.   On the Schedule C attached to the tax return 2018 and 2019 tax returns, Salgado falsely claimed that Customer 14 owned a "Driver" business that did not receive any income or gross receipts, but that incurred a $20,117 loss in 2018 and a $25,671 loss in 2019.

104.   On the 2018 tax return, Salgado falsely claimed that Customer 14's non-existent business incurred expenses including $14,917 in car and truck expenses and $5,200 in deductible meal expenses.  On the 2019 tax return, Salgado falsely claimed that Customer 14's non-existent business incurred expenses including $22,579 in car and truck, $1,652 for supplies, and $1,400 for a cell phone.  Salgado did not ask Customer 14 whether she owned or operated a business or whether she earned any income outside of her employment.  Customer 14 did not know that Salgado reported this non-existent business and related expenses on her 2018 and 2019 tax returns.

105.   By reporting the fabricated business losses, Salgado fraudulently reduced Customer 14's taxable income.  On Customer 14's 2018 tax return, as a result of the fabricated business loss, Salgado claimed a bogus refund of $1,913. On Customer 14's 2019 tax return, as a result of the fabricated business loss, Salgado claimed a fraudulent EITC in the amount of $118 and a bogus refund of $2,447.

**Customer 15**

106.   Jazmin Salgado prepared the 2019 federal income tax return of Customer 15 of Orlando, Florida. Originally, Karina Salgado Williams prepared Customer 15's 2019 tax return. After the return was prepared, Customer 15 returned to pick up a check representing a cash advance on his tax refund, and Karina Salgado Williams informed him that he would have to go to a different location to pick up the check and meet with Jazmin Salgado. When Customer 15 met with Salgado, Salgado informed Customer 15 that Salgado would need to prepare a new tax

return, asked to see a copy of the original tax return that Karina Salgado Williams prepared, and then prepared a tax return that claimed a larger refund than the original tax return.

107.    Customer 15 was employed as a forklift operator in 2019.  Customer 15 provided Salgado with a copy of his last paycheck stub, and Salgado told him that she did not need a copy of his Form W-2 to prepare his tax return.  Customer 15 also earned around $200 cutting his neighbors' lawns.  Customer 15 lived with his girlfriend and his two children in 2019.

108.    On the Schedule C attached to the tax return, Salgado falsely claimed that Customer 15 owned a "Forklift" business that incurred a $12,603 loss in 2019. Salgado falsely claimed that Customer 15's non-existent business received $2,365 in gross receipts or sales, but incurred expenses totaling $14,968, including $13,131 in car and truck expenses, $276 for repairs and maintenance, and $1,561 for utilities.  By reporting this fabricated loss, and also claiming a phony dependent, Salgado claimed a fraudulent EITC in the amount of $1,977 and a bogus refund in the amount of $6,131 on Customer 15's 2019 tax return.  Customer 15 paid $500 to have the tax return prepared, and the fee was taken from his tax refund.

**Customers 16 and 17**

109.    Jazmin Salgado prepared the 2018 federal income tax return of Customers 16 and 17 of Clermont, Florida.

110.    Customer 16 was employed at a bottling company in 2018, which issued a Form W-2, and both Customers 16 and 17 worked as contractors at a janitorial service that issued Forms 1099-MISC.  Customers did not incur any job-related expenses, other than spending around $200 per month on gas as part of their contracting work. Customer 16 provided Salgado with a copy of his Form W-2, the Forms 1099-MISC for he and his wife, and copies of his

mortgage and property tax statements.  Neither Customer 16 nor Customer 17 owned or operated a business in 2018.

111.    On the Schedule C attached to the tax return, Salgado reported the income that Customers 16 and 17 received for their contracting work as reported on the Forms 1099-MISC, in the total amount of $26,793.  Salgado reported this as income solely to Customer 16, who she falsely claimed owned or operated a business that lost $29,317 in 2018. Salgado falsely claimed that Customer 16 incurred business expenses totaling $56,110, including $26,290 in car and truck expenses, $19,418 for insurance, $6,802 for a mortgage, and $3,600 for deductible meals. The mortgage properly should have been reported on a Form Schedule A; however, because the amount of the mortgage expense does not exceed the standard deduction, Salgado improperly reported the expense on the Schedule C to falsely increase the claimed tax refund.  By reporting this fabricated loss, Salgado claimed a bogus refund in the amount of $4,500 on the 2019 tax return of Customers 16 and 17.  Salgado did not review the completed tax return with Customers 16 and 17.

**Customer 18**

112.    Nikita Williams is identified as the preparer of the 2019 federal income tax return of Customer 18 of Sanford, Florida.  Customer 18 was employed as a sales representative in 2019 and his tax return reported that he received wages totaling $41,730.

113.    On the Schedule C attached to the tax return, Nikita Williams of Salgado Tax and Notary Services falsely claimed that Customer 18 owned a barber business that received $422 in gross receipts or sales, but incurred expenses totaling $32,747, including $13,192 in car and truck expenses, $16,800 for renting business property, $355 for supplies, and $2,400 for utilities. By reporting a fabricated business loss in the amount of $32,325, Nikita Williams fraudulently

reduced Customer 18's taxable income to zero, claimed a fabricated EITC in the amount of $470, and claimed a bogus refund in the amount of $2,345 on Customer 18's 2019 tax return.

**Customer 19**

114.    Nikita Williams, of Salgado Tax and Notary Services, is identified as the preparer of the 2019 federal income tax return of Customer 19 of Steinhatchee, Florida. Customer 19 was employed working at a warehouse in 2019 and her tax return reported that she received wages totaling $46,088.

115.    On the Schedule C attached to the tax return, Nikita Williams falsely claimed that Customer 19 owned a childcare business that received $462 in gross receipts or sales, but incurred expenses totaling $21,203, including $13,778 in car and truck expenses, $7,200 for renting business property, and $255 for supplies.  By reporting a fabricated business loss in the amount of $20,741, Nikita Williams fraudulently reduced Customer 19's taxable income and claimed a bogus refund in the amount of $3,065 on Customer 19's 2019 tax return.

**Customer 20**

116.    Nikita Williams, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 20 of Lehigh Acres, Florida. Customer 20 and his tax return reported that he received wages totaling $53,220 in 2018.

117.    On the Schedule C attached to the tax return, Nikita Williams falsely claimed that Customer 20 owned a landscaping business that did not have any sales or receive any gross receipts, but incurred expenses totaling $15,723, including $5,523 for advertising and $10,200 for renting business property.  By reporting a fabricated business loss in the amount of $15,275, along with fabricated and personal non-deductible expenses, discussed in paragraphs 155

through 156, *infra*, Nikita Williams fraudulently reduced Customer 20's taxable income and claimed a bogus refund in the amount of $2,608 on Customer 20's 2018 tax return.

118.     Nikita Williams is also identified as the preparer of the 2019 federal income tax return of Customer 20.  On the Schedule C attached to the tax return, Nikita Williams falsely claimed that Customer 20 owned a landscaping business received $588 in gross receipts or sales, but incurred expenses totaling $25,118, including $13,958 for car and truck expenses, $7,200 for renting business property, $1,560 for repairs and maintenance, and $2,400 for utilities.  By reporting a fabricated business loss in the amount of $24,530, Nikita Williams fraudulently reduced Customer 20's taxable income and claimed a bogus refund in the amount of $2,314 on Customer 20's 2019 tax return.

### Customer 21

119.     Shasha Cruz (identified on the tax return as "Sasha"), of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 21 of Orlando, Florida. Customer 21 was employed as a cook in 2018 and her tax return reported that she received wages totaling $24,081.

120.     On the Schedule C attached to the tax return, Cruz falsely claimed that Customer 21 owned a hairstyling business that received $2,500 in gross receipts or sales, but incurred expenses totaling $10,095, including $15 for advertising, $9,955 in car and truck expenses, and $125 for supplies.  By reporting a fabricated business loss in the amount of $7,595, Cruz fraudulently reduced Customer 21's taxable income and claimed a falsely inflated EITC in the amount of $3,461 and a bogus refund in the amount of $6,152 on Customer 21's 2018 tax return.

### Customer 22

121.     Shasha Cruz (identified on the tax return as "Sasha"), of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 22 of Longwood, Florida. Customer 22 was employed at a medical facility in 2018 and her tax return reported that she received wages totaling $23,148.

122.     On the Schedule C attached to the tax return, Cruz falsely claimed that Customer 22 owned a hairstyling business that received $1,362 in gross receipts or sales, but incurred expenses totaling $4,551, including $10 for advertising, $4,500 for renting or leasing business vehicles, machinery, and equipment, and $41 for supplies. By reporting a fabricated business loss in the amount of $3,189, Cruz fraudulently reduced Customer 22's taxable income and claimed a falsely inflated EITC in the amount of $5,439 and a bogus refund in the amount of $8,189 on Customer 22's 2018 tax return.

### Customer 23

123.     Bivins, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 23 of Orlando, Florida. Customer 23 was employed at a medical facility in 2018 and her tax return reported that she received wages totaling $38,990.

124.     On the Schedule C attached to the tax return, Bivins falsely claimed that Customer 23 owned a make-up artist business that received $600 in gross receipts or sales, but incurred expenses totaling $21,454, including $100 for advertising, $17,654 for car and truck expenses, $1,200 for renting or leasing business property, and $2,500 for supplies. By reporting a fabricated business loss in the amount of $20,854, Bivins fraudulently reduced Customer 23's taxable income and claimed a falsely inflated EITC in the amount of $3,461 and a bogus refund in the amount of $5,318 on Customer 23's 2018 tax return.

**Customer 24**

125.    Bivins, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 24 of Orlando, Florida.  Customer 24's tax return reported that she received wages totaling $26,633 in 2018.

126.    On the Schedule C attached to the tax return, Bivins falsely claimed that Customer 24 owned a beauty salon that received $900 in gross receipts or sales, but incurred expenses totaling $10,045, including $100 for advertising, $9,495 for car and truck expenses, and $450 for repairs and maintenance.   By reporting a fabricated business loss in the amount of $9,145, Bivins fraudulently reduced Customer 24's taxable income to zero and claimed a falsely inflated EITC in the amount of $5,716 and a bogus refund in the amount of $9,883 on Customer 24's 2018 tax return.

**Customer 25**

127.    Bivins, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 25 of Deltona, Florida.  Customer 25's tax return reported that she received wages totaling $31,220 in 2018.

128.    On the Schedule C attached to the tax return, Bivins falsely claimed that Customer 25 owned a make-up artist business that received $900 in gross receipts or sales, but incurred expenses totaling $9,506, including $200 for advertising, $8,106 for car and truck expenses, and $100 for renting or leasing business property.  By reporting a fabricated business loss in the amount of $8,606, Bivins fraudulently reduced Customer 25's taxable income and claimed a falsely inflated EITC in the amount of $2,828 and a bogus refund in the amount of $6,857 on Customer 25's 2018 tax return.

**Customer 26**

129.    Bivins, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 26 of Bloomington, Illinois.  Customer 26 was employed for an insurance company in 2018, and her tax return reported that she received wages totaling $50,673.

130.    On the Schedule C attached to the tax return, Bivins falsely claimed that Customer 26 owned a hair salon that received $948 in gross receipts or sales, but incurred expenses totaling $27,336, including $500 for advertising, $13,536 for car and truck expenses, $9,600 for renting or leasing business property, $3,450 for supplies, and $250 for deductible meals.  By reporting a fabricated business loss in the amount of $26,388, Bivins fraudulently reduced Customer 26's taxable income and claimed a falsely inflated EITC in the amount of $2,564 and a corresponding bogus refund in the amount of $2,564 on Customer 26's 2018 tax return.

**Bogus Schedule A and Schedule 1 Deductions**

131.    The Defendants, and those acting at their direction or with their knowledge and consent prepared tax returns (up until 2019 when changes to the Internal Revenue Code concerning deductible expenses took effect) reporting bogus itemized deductions on Form Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable income.

132.    For example, the Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns for customers that include Forms Schedule A making false claims for purported unreimbursed employee business expenses.  Section 162 of the Internal Revenue Code governs trade or business expenses.  The Defendants, and those acting at

their direction or with their knowledge and consent, often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business expenses, particularly for purported business miles driven by customers.

133.    According to Salgado, LBS Tax Services instructed her and other preparers working at LBS to claim unreimbursed employee business expenses when the customer made more than $24,000, in order to reduce the customer's taxable income.

134.    The Form Schedule A is no longer used to report unreimbursed employee business expenses.

135.    Beginning with tax year 2018 tax returns, unreimbursed employee business expenses and certain other deductions, or adjustments to income, are now reported on Forms Schedule 1 ("Additional Income and Adjustments to Income").  Additionally, certain deductions may no longer be claimed as deductions on tax returns.  Unreimbursed employee business expenses may now only be claimed by specific categories of individuals: Armed Forces reservists, qualified performing artists, fee-basis state or local government officials, and employees with impairment-related work expenses.

136.    The Defendants continue to claim bogus and non-qualifying expenses on Forms Schedule 1. The Defendants frequently attach a statement to the tax return categorizing the claimed expenses as "Household Expenses," "Personal Expenses," or simply "Expenses."  The Defendants ask customers about non-deductible personal expenses, such as how many miles the customer drive to and from their place of employment and how much the customer spent on rent and utilities for their home.  Furthermore, because of the new provisions in the Internal Revenue Code and the Defendants' use of the Schedule 1 to claim phony deductions, the Defendants are now claiming both the standard deduction and the fabricated and non-qualifying deductions

reported on the Schedule 1, often resulting in larger claimed deductions than before when the Defendants reported the phony deductions (such as for unreimbursed employee business expenses) on the Schedule A.

137.    Since 2016, of the 1,684 tax returns prepared and filed with an EFIN associated with Karina Salgado Williams, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, or K&T Loyal Tax Services LLC, 531 (or 32%) of the tax returns claim unreimbursed employee business expenses on a Form Schedule A or Schedule 1.

138.    Since 2016, of the 1,322 tax returns prepared and filed with an EFIN associated with Jazmin Salgado or Jazmin Salgado LLC, 599 (or 45%) of the tax returns claim unreimbursed employee business expenses on a Form Schedule A or Schedule 1.

### Customer 27

139.    For example, Nikita Williams is identified as the preparer of the 2017 federal income tax return of Customer 27 of Orlando, Florida.

140.    Customer 27's 2017 tax return reported that he received wages totaling $12,532. On the Schedule A attached to Customer 27's 2017 tax return, Nikita Williams reported fabricated unreimbursed employee business expenses totaling $19,062, more than Customer 27 received in wages.  As a result of these fabricated and non-qualifying expenses, Nikita Williams claimed a bogus refund in the amount of $1,936 on Customer 27's 2017 tax return.

### Customer 28

141.    Nikita Williams is identified as the preparer of the 2017 federal income tax return of Customer 28 of Winter Haven, Florida.

142.    Customer 28's 2017 tax return reported that she received wages totaling $41,620. On the Schedule A attached to Customer 28's 2017 tax return, Nikita Williams reported

fabricated unreimbursed employee business expenses totaling $23,740, or over 57% of Customer 28's wages. Nikita Williams falsely reported that Customer 28 incurred job-related expenses including $600 for "water," $2,268 for "cable," and $2,616 for a cell phone. The remaining purported job-related expenses were not categorized on the tax return. Nikita Williams also reported a deduction for "other" miscellaneous expenses in the amount of $15,492 for fabricated and non-qualifying personal expenses, including $9,108 for rent, $2,184 for car payments, and $4,200 for car insurance. As a result of these fabricated and non-qualifying expenses, Nikita Williams fraudulently reduced Customer 28's taxable income to zero and claimed a bogus refund in the amount of $3,775 on Customer 28's 2017 tax return.

**Customer 29**

143.    Nikita Williams is identified as the preparer of the 2017 federal income tax return of Customer 29 of Saint Cloud, Florida.

144.    Customer 29's 2017 tax return reported that she received wages totaling $29,079. On the Schedule A attached to Customer 29's 2017 tax return, Nikita Williams reported fabricated unreimbursed employee business expenses totaling $22,385, or over 76% of Customer 29's wages. Nikita Williams falsely reported that Customer 29 incurred job-related expenses including $1,656 for car insurance, a personal expense. The remaining purported job-related expenses were not categorized on the tax return. Nikita Williams also reported a deduction for "other" miscellaneous expenses in the amount of $7,476 for fabricated and non-qualifying personal expenses, including $5,520 for car payments, $1,176 for "lights," and $780 for "water." As a result of these fabricated and non-qualifying expenses, Nikita Williams fraudulently reduced Customer 29's taxable income to zero and claimed a bogus refund in the amount of $3,501 on Customer 29's 2017 tax return.

### Customer 30

145.  Nikita Williams is identified as the preparer of the 2017 federal income tax return of Customer 30 of Kissimmee, Florida.

146.  On the Schedule A attached to Customer 30's 2017 tax return, Nikita Williams reported a deduction for "other" miscellaneous expenses in the amount of $19,440 for fabricated and non-qualifying personal expenses, including $13,200 for rent, $1,440 for "lights," and $4,800 for car payments. As a result of these fabricated and non-qualifying expenses, Nikita Williams fraudulently reduced Customer 30's taxable income to zero and claimed a bogus refund in the amount of $5,092 on Customer 30's 2017 tax return.

### Customer 31

147.  Karina Salgado Williams, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 31 of Orlando, Florida. In 2018, Customer 31 was employed by the postal service and his tax return reported that he received wages totaling $72,671.

148.  On the Schedule 1, and the Form 2106, attached to the tax return, Karina Salgado Williams reported bogus (and otherwise non-qualifying) adjustments to income for unreimbursed employee business expenses totaling $10,074, based on fabricated vehicle expenses totaling $9,174 (for Customer 31 purportedly driving his personal vehicle 16,833 miles for his job as a postal employee) and meal expenses totaling $1,800. As a result of claiming these fabricated, non-qualifying expenses as deductible adjustments to income, Karina Salgado Williams claimed a bogus refund in the amount of $6,885 on Customer 31's 2018 tax return.

**Customer 32**

149.    Karina Salgado Williams, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 32 of Orlando, Florida. Customer 32's 2018 tax return reported that she received wages totaling $41,654.

150.    On the Schedule A attached to the tax return, Karina Salgado Williams falsely reported that Customer 32 incurred an expense for mortgage interest in the absurd amount of $4,022,014.  The amount of this bogus expense clearly stands out as a mistake, even to someone unfamiliar with reviewing a tax return, and demonstrates the total lack of any oversight or quality control by Karina Salgado Williams and United Tax Financial Solutions, LLC.  In reality, the Form 1098 mortgage statement issued by the lender showed that Customer 32 paid $4,143 in mortgage interest in 2018.  As a result of claiming this fabricated mortgage expense, Karina Salgado Williams falsely reduced Customer 32's taxable income to zero and claimed a bogus refund in the amount of $2,617 on Customer 32's 2018 tax return.

**Customer 33**

151.    Karina Salgado Williams, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 33 of Melbourne, Florida. Customer 33's tax return reported that he received wages totaling $63,560.

152.    On the Schedule A attached to the tax return, Karina Salgado Williams falsely reported that Customer 33 incurred expenses totaling $21,000 for "other taxes" that he paid. Karina Salgado Williams attached a statement to the tax return identifying the purported taxes as personal expenses for "repairs."  As a result of improperly claiming these personal expenses on the Schedule A, Cruz claimed a bogus refund in the amount of $1,499 on Customer 33's 2018 tax return.

**Customer 34**

153.     Shasha Cruz, of United Tax Financial Solutions, is identified as the preparer of the 2018 federal income tax return of Customer 34 of Winter Springs, Florida. In 2018, Customer 34 was employed by a bank and her tax return reported that she received wages totaling $50,214.

154.     On the Schedule A attached to the tax return, Cruz falsely reported that Customer 34 incurred expenses totaling $8,000 for "other taxes" that she paid. Cruz attached a statement to the tax return identifying the purported taxes as personal expenses for "Roof repair" in the amount of $5,000 and "Ceiling repair" in the amount of $3,000. Cruz also falsely reported that Customer 34 incurred mortgage interest expenses in the amount of $9,584. In reality, the Form 1098 mortgage statement issued by the lender showed that Customer 34 paid $4,791 in mortgage interest in 2018. As a result of improperly claiming these personal expenses and the falsely inflated mortgage interest expense on the Schedule A, Cruz claimed a bogus refund in the amount of $1,442 on Customer 34's 2018 tax return.

**Customer 20 (continued)**

155.     As discussed in paragraphs 116 through 117, *supra*, Nikita Williams of United Tax Financial Solutions is identified as the preparer of the 2018 federal income tax return of Customer 20 of Lehigh Acres, Florida. Customer 20's 2018 tax return reported that he received wages totaling $53,220.

156.     On the Schedule 1 attached to the tax return, Nikita Williams reported fabricated and non-qualifying expenses totaling $10,236. Nikita Williams did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $10,236 on line 36 of the Schedule 1 (Form 1040), which is the line to report the total adjustments to income claimed.

Elsewhere on the return, Salgado attached a statement categorizing the $10,236 as "household expenses." As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, along with the fabricated business loss in the amount of $15,275, discussed in paragraphs 116 through 117, *supra*, Nikita Williams falsely reduced Customer 20's taxable income to zero and claimed a bogus refund in the amount of $3,468 on Customer 20's 2018 tax return.

### Customer 35

157.    Salgado prepared the 2018 and 2019 federal income tax returns of Customer 35 of Davenport, Florida, at United Tax Services in Orlando, Florida. In 2018 and 2019, Customer 35 was employed at Whole Foods and the postal service and provided Salgado with copies of her Forms W-2. Each year, Salgado asks Customer 35 how much she spends on personal expenses, such as rent and home utilities, and how far Customer 35 drives to and from her jobs. Salgado falsely told Customer 35 that these personal expenses were deductible.

158.    Customer 35's 2018 tax return reported that she received wages totaling $33,536. On the Schedule 1 attached to the tax return, Salgado reported fabricated and non-qualifying expenses totaling $27,024. Salgado did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $27,024 on line 36 of the Schedule 1 (Form 1040), which is the line to report the total adjustments to income claimed. Elsewhere on the return, Salgado attached a statement categorizing the $27,023 simply as "expenses." Although Customer 35 informed Salgado about personal expenses, including for rent, utilities, and clothing, Customer 35 did not incur expenses in this amount, and did not tell Salgado that she incurred this amount of expenses. As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, Salgado falsely reduced Customer 35's

taxable income to zero and claimed a bogus refund in the amount of $3,468 on Customer 35's 2018 tax return.

159.    Customer 35's 2019 tax return reported that she received wages totaling $37,497. On the Schedule 1 attached to the tax return, Salgado reported fabricated and non-qualifying expenses totaling $18,924. Salgado did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $18,924 on line 22 of the Schedule 1 (Form 1040 or 1040-SR), which is the line to report the total adjustments to income claimed. Elsewhere on the return, Salgado attached a statement categorizing the $18,924 simply as "expenses." Although Customer 35 informed Salgado about personal expenses, including for rent, utilities, and clothing, Customer 35 did not incur expenses in this amount, and did not tell Salgado that she incurred this amount of expenses. As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, Salgado claimed a bogus refund in the amount of $3,231 on Customer 35's 2019 tax return.

**Customer 36**

160.    Salgado prepared the 2018 and 2019 federal income tax returns of Customer 36 of Kissimmee, Florida, at United Tax Services. In 2018 and 2019, Customer 36 was employed as a hostess at several resorts and provided Salgado with copies of her Forms W-2. Each year, Customer 36 provides Salgado with copies of her bills for personal expenses, including rent and car payments, and Salgado reviews those bills with Customer 36 and discusses the amounts with Customer 36. Salgado falsely told Customer 36 that these personal expenses were deductible.

161.    Customer 36's 2018 tax return reported that she received wages totaling $24,604. On the Schedule 1 attached to the tax return, Salgado reported fabricated and non-qualifying expenses totaling $20,040. Salgado did not report these expenses as a specific category of

expense on the Schedule 1, but simply reported $20,040 on line 36 of the Schedule 1 (Form 1040), which is the line to report the total adjustments to income claimed. Elsewhere on the return, Salgado attached a statement categorizing the $20,040 as "house expenses." As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, Salgado falsely reduced Customer 36's taxable income to zero and claimed a bogus refund in the amount of $1,741 on Customer 36's 2018 tax return.

162.    Customer 36's 2019 tax return reported that she received wages totaling $29,842. On the Schedule 1 attached to the tax return, Salgado reported fabricated and non-qualifying expenses totaling $18,630. Salgado did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $18,630 on line 22 of the Schedule 1 (Form 1040 or 1040-SR), which is the line to report the total adjustments to income claimed. Elsewhere on the return, Salgado attached a statement categorizing the $18,630 as "misc expenses." As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, Salgado falsely reduced Customer 36's taxable income to zero and claimed a bogus refund in the amount of $1,698 on Customer 36's 2019 tax return.

**<u>Customer 37</u>**

163.    Salgado prepared the 2019 federal income tax return of Customer 37 of Orlando, Florida, at United Tax Services. In 2019, Customer 37 was employed at a sheet metal company. Customer 37 provided Salgado with a copy of his Form W-2 from this job. Customer 37 informed Salgado that his two children lived in Puerto Rico with their mother in 2019. Salgado asked Customer 37 about his expenses for rent, gas, food, and his cell phone. Salgado discussed the amounts with Customer 37 and falsely told Customer 37 that these personal expenses were deductible.

164.    Customer 37's 2019 tax return reported that he received $38,173 in wages from his sheet metal job. On the Schedule 1 attached to the tax return, Salgado reported fabricated and non-qualifying expenses totaling $25,017. Salgado did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $25,017 on line 22 of the Schedule 1 (Form 1040 or 1040-SR), which is the line to report the total adjustments to income claimed. Elsewhere on the return, Salgado attached a statement categorizing the $25,017 as "household expenses." As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, along with falsely reporting Customer 37's children as qualifying dependents, Salgado claimed a bogus refund in the amount of $8,303 on Customer 37's 2019 tax return.

**Customer 38**

165.    Salgado prepared the 2018 federal income tax return of Customer 38 of Windermere, Florida, at United Tax Services located in an apartment at 6137 Westgate Dr., Orlando, Florida. In 2018, Customer 38 was retired and received income from a retirement fund. Customer 38 provided Salgado with a copy of forms showing his retirement income, mortgage statement, and a list of personal expenses and house expenses.

166.    On the Schedule 1 attached to the tax return, Salgado reported adjustments to income totaling $32,911. Other than reporting a health savings deduction in the amount of $4,450, Salgado did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $32,911 on line 36 of the Schedule 1 (Form 1040), which is the line to report the total adjustments to income claimed. Elsewhere on the tax return, Salgado attached a statement categorizing $28,461 of the $32,911 simply as "expenses." As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, Salgado

claimed a bogus refund in the amount of $1,727 on Customer 38's 2018 tax return.  Customer 38 does not normally receive a tax refund.  Salgado falsely told Customer 38 that he was receiving a refund due to changes in the tax law.

**Customer 39**

167.    Salgado prepared the 2018 federal income tax return of Customer 39 of Windermere, Florida, at United Tax Services.  Customer 39 did not meet in person with Salgado to have the tax return prepared, but instead communicated with Salgado by email.

168.    In 2018, Customer 39 worked in the insurance industry.  Customer 39 provided Salgado with a copy of her Form W-2, a Form 1099-MISC, and records of her personal expenses including rent, electric and internet bills, and the mileage she drives to and from work.  Salgado falsely told Customer 39 that such expenses were deductible.

169.    On the Schedule 1 attached to the tax return, Salgado reported fabricated and non-qualifying expenses totaling $33,136.  Salgado did not report these expenses as a specific category of expense on the Schedule 1, but simply reported $33,136 on line 36 of the Schedule 1 (Form 1040), which is the line to report the total adjustments to income claimed.  Elsewhere on the tax return, Salgado attached a statement categorizing the $33,136 simply as "expenses."  As a result of claiming these fabricated, non-qualifying personal expenses as deductible adjustments to income, Salgado claimed a bogus refund in the amount of $4,769 on Customer 39's 2018 tax return.  Salgado did not review the completed tax return with Customer 39.

**Intentionally Claiming an Improper Filing Status**

170.    The Defendants, and those acting at their direction or with their knowledge and consent, prepare tax returns reporting false filing status.  Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of the customers' standard

44

deduction, even though the Defendants are aware that the customer does not qualify for Head of Household filing status.

171.    The Defendants file separate returns for married couples who are not living apart, improperly using the "head-of-household" or "single" filing status, both of which are unavailable to married couples living together.  Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

**Customer 1 (continued)**

172.    For example, Karina Salgado Williams prepared the 2018 federal income tax return of Customer 1, as discussed in paragraphs 49 through 51, *supra*. Customer 1 has been married for over 30 years and lived with her husband in 2018.  Customer 1's husband was with her when Customer 1's tax return was prepared, and his return was prepared separately. Although Karina Salgado Williams knew that Customer 1 was married, Karina Salgado Williams falsely claimed "Head of Household" filing status on Customer 1's tax return. By reporting this improper filing status, and the fabricated business loss discussed in paragraphs 49 through 51, *supra*, Karina Salgado Williams claimed a bogus refund in the amount of $7,845 on Customer 1's 2018 tax return.

**Customer 9 (continued)**

173.    Genesis Pabon of Salgado Tax and Notary Services is identified as the preparer of the 2019 federal income tax return of Customer 9, as discussed in paragraphs 81 through 84, *supra*. Customer 9 was married in 2019 and lived with her mother-in-law in 2019. Customer 9

did not pay rent or any household expenses.  Customer 9 and her husband had their separate tax

returns prepared at the same time, and the preparer falsely informed Customer 9 that she could

claim on of her children as a dependent on her tax return and her husband could claim the other

two children as dependents on his tax return.

174.     On Customer 9's 2019 tax return, the preparer falsely claimed "single" filing

status, rather than claiming the "married filing separately" filing status.  The preparer also

claimed one of Customer 9's children as a dependent.  By improperly claiming this filing status

and the dependent, along with the fabricated business income, the preparer claimed a bogus

refund in the amount of $3,721 on Customer 9's 2019 tax return.

**Customers 40 and 41**

175.     Genesis Pabon of Salgado Tax and Notary Services is identified as the preparer of

the 2019 federal income tax returns of married Customers 40 and 41 of Kissimmee, Florida.

Customers 40 and 41 had their separate tax returns prepared at the same time, and the preparer

stated that it would be better for Customers 40 and 41 to file separate tax returns. The preparer

did not ask Customer 40 or Customer 41 any questions, rushed through the preparation process,

and did not review the completed tax returns with Customers 40 and 41, but only informed them

of the amount of the refund they would be receiving.  The preparer also informed Customers 40

and 41 that the tax preparation fees – around $700 for each tax return – would be taken out of the

refunds. Thus, by preparing separate tax returns, the preparer generated additional fees.

176.     Despite knowing that Customers 40 and 41 were married, the preparer falsely

claimed "single" filing status and claimed two dependents on both Customer 40's and Customer

41's tax return. By claiming the false filing status and reporting two children as dependents on

each tax return, the preparer fraudulently claimed a bogus EITC in the amount of $5,828 on both

tax returns, and a bogus refund of $5,418 on Customer 40's 2019 tax return and a bogus refund of $5,422 on Customer 41's 2019 tax return.

### Improperly Preparing and Filing Returns based on Pay Stubs

174.    The Defendants also prepare and file federal income tax returns using customers' end-of-year pay stubs and then file their customers' tax returns without valid Forms W-2.

175.    Federal tax returns for wage earners must be prepared using Forms W-2. Using pay stubs to prepare and file tax returns is improper and violates IRS rules. Moreover, end-of-year pay stubs frequently omit income and distributions that are shown on employer-issued Forms W-2. Thus, preparing and filing federal income tax returns based on information from end-of-year pay stubs inevitably results in errors and omissions on federal tax returns, which necessarily interferes with the administration and enforcement of the internal revenue laws.

176.    The Defendants know that using paystubs to prepare and file returns violates IRS rules and regulations because in order to participate in the IRS's electronic filing program, all electronic filers must acknowledge that they will comply with the IRS's requirements, which expressly prohibit filing returns prepared with pay stubs and without genuine Forms W-2.

177.    The Defendants begin soliciting customers in December by falsely telling customers that their returns can be prepared using their most recent paystub. Advanced Tax Services opens before the end of the tax year, before customers know how much income they earned and taxes they owe for the year, and before employers are able to issue Forms W-2 to their employees. Forms W-2 are not available to employees before the end of the calendar tax year, and tax returns cannot be filed before January of the processing year.

178.    By preparing tax returns before the end of the tax year, the Defendants unfairly solicit business before competitors.

### Reporting False Tax Withholdings Far Exceeding Amounts Actually Withheld and Reported on Forms W-2

177.   The Defendants prepare tax returns on which they falsely report the amount of taxes withheld from customers' income far in excess of the taxes actually withheld as reported on Forms W-2 issued to the customers by their employers.

178.   Employers are required to compute and withhold from their employees' wages federal income, social security, and Medicare taxes.  At the end of a tax year, the amount withheld from an employee's wages is a fixed and certain number.  The final amount withheld is typically reported on a Form W-2.  The Form W-2 is sent to the taxpayer from the employer and later filed by the taxpayer or his tax preparer along with the tax return.

179.   The Defendants disregard the federal tax withholdings reported on the Form W-2 and instead report a far larger amount on the tax return.  By falsely claiming that a larger amount of tax was withheld from customers' income, the Defendants falsely claim a larger refund of taxes allegedly withheld.  Fabricating the withholding amounts reported on customers' tax returns in contravention of the amounts reported on customers' Forms W-2 provided to the Defendants constitutes outright fraud and is a serious obstruction of tax administration.

180.   For example, in 2019, preparers at United Tax Financial Solutions LLC prepared and filed 679 federal income tax returns. Of these tax returns, 169 incorrectly reported the federal income tax withheld from customers' wages by $100 or more.  Of these tax returns, 102 reported more taxes withheld than were actually withheld from the customers' wages, resulting in falsely claiming refunds of bogus tax withholdings totaling $182,500.

#### Customer 42

181.   Nikita Williams of United Tax Financial Solutions is identified as the paid preparer of the 2018 federal income tax return of Customer 42 of Gainesville, Georgia.

According to information that Customer 42's two employers provided to the IRS on Forms W-2, Customer 42 received wages totaling $31,906 and had $1,528 in taxes withheld from her wages in 2018.

182.    On Customer 42's 2018 tax return, Nikita Williams falsely reported that Customer 42 received wages totaling $32,493 ($587 more than reported on her Forms W-2) and had taxes withheld in the amount of $2,928 ($1,400 more than reported on her Forms W-2). By falsely claiming $2,928 in taxes purportedly withheld, Nikita Williams claimed a larger bogus refund of $10,182 on Customer 42's 2018 tax return.

**Bogus Education Credits**

183.    The Defendants, and those acting at their direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American Opportunity education credit, on customers' federal income tax returns. Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and those acting at their direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to generate a larger bogus refund.

184.    Educational institutions prepare and submit to the IRS, and provide a copy to the student, an IRS Form 1098-T to show qualifying tuition expenses billed to students and the amounts of any scholarships or grants provided to students.

185.    Since 2017, Karina Salgado Williams and preparers at United Tax Financial Solutions, LLC and Salgado Tax & Repo, LLC, including Cruz and Bivins, prepared a total of 83

tax returns claiming an education credit.  Of these 83 claimed education credits, for 41 of the credits, there was no related Form 1098-T on file with the IRS.

186.    Since 2017, Jazmin Salgado and preparers at Jazmin Salgado, LLC d/b/a United Tax Services prepared a total of 71 tax returns claiming an education credit.  Of these 71 claimed education credits, for 12 of the credits, there was no related Form 1098-T on file with the IRS.

187.    For customers who did in fact receive a Form 1098-T, the claimed credits were fabricated or otherwise did not match the information provided by the educational institution on the Forms 1098-T.  For example, the Defendants and preparers acting at their direction or with their consent frequently claimed exactly $3,999 (one dollar less than the maximum amount allowed to be claimed) as qualified tuition expenses in contravention of the actual tuition amounts reported on the Forms 1098-T.  In addition, the Defendants and preparers acting at their direction or with their consent improperly claimed credits when the scholarship amounts exceeded the tuition amount on Form 1098-T, and therefore the customer did not actually incur any out-of-pocket expenses that could be reported to claim and education credit.  Thus, the Defendants, and preparers acting at their direction or with their consent, disregard the tuition amount customers actually paid and the amount customers received in the form of scholarships or grants and improperly claim the maximum $4,000 as qualified tuition expenses.

### Unconscionable and Undisclosed Fees

188.    The Defendants charge unconscionably high fees to prepare tax returns, which are typically charged without customers' knowledge.  The Defendants charge these high fees to prepare and file false tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return.

189.    The Defendants intentionally deceive customers regarding the fees charged for the preparation of tax returns.

190.    The Defendants charge additional fees for each form and schedule (such as a Schedule C or Schedule A) attached to the Form 1040 tax return.  These fees result in a total tax return preparation fee much higher than the amount advertised.

191.    The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants, and those acting at their direction or with their knowledge and consent, to prepare and file fraudulent returns claiming excessive refunds based on bogus claims and associated forms and schedules.

192.    Because the Defendants target low-income individuals, the high fees frequently can pose a significant financial hardship for customers.  Customers may be required to pay back the improper refunds that they receive. Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees.  Thus, customers are then out-of-pocket the high fees that the Defendants charged.  Additionally, fees are unconscionable for the basic – albeit fraudulent – tax returns being prepared for these customers, who are often eligible for free tax return preparation and electronic filing elsewhere.

193.    The Defendants, and those acting at their direction or with their knowledge and consent, also routinely and intentionally fail to disclose to customers all fees charged.  The Defendants, and those acting at their direction or with their knowledge and consent, present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing.  Alternatively, the

Defendants, and those acting at their direction or with their knowledge and consent, tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent.  Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

194.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund.  By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees charged are much more than the customers anticipated for the preparation of their tax return until the customers receive a refund that is much less than quoted by the tax return preparer, after the Defendants subtracted their high fees.

195.    The Defendants' practice of charging unconscionable and undisclosed fees interferes with the administration and enforcement of the Internal Revenue laws. Such behavior erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking professional assistance with the preparation of their federal tax returns.

**Failure to Provide Customers with Copies of their Completed Tax Returns
in Violation of 26 U.S.C. § 6701(a)**

196.    The Defendants, and those acting at their direction or with their knowledge and consent, fail to provide customers with copies of their completed tax returns.  The completed tax return, filed with the IRS, shows the refund that the Defendants are claiming for the customer. For example, a customer who is provided a copy of a tax return showing the actual tax refund claimed is able to determine the amount of fees that the Defendants charged by subtracting the amount of the refund that the customer actually receives from the amount of the refund claimed

52

on the tax return.  The Defendants' failure to provide a copy of a customer's completed tax return is part of the strategy to conceal the actual fees from her customers.

197.    Failing to provide a customer with a copy of the completed tax return also violates 26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of [a tax return or claim for refund] to the taxpayer not later than the time such return or claim is presented for such taxpayer's signature."

198.    Customers who do receive a copy of the tax return often receive only the first two pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C, Forms Schedule A, and Forms 2106, "Employee Business Expenses."  This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms.

### Failure to Identify the Actual Preparer of Customers' Tax Returns in Violation of 26 U.S.C. §§ 6695(b) and 6695(c)

199.    The Defendants prepared tax returns for customers on which they did not identify themselves as the paid preparer.  As discussed in some of the examples above, many tax returns identifying one individual as the paid preparer were actually prepared by another individual who was not properly identified on the tax return.

200.    To further illustrate, the IRS issued a unique Preparer Tax Identification Number (PTIN) to Genesis Pabon in November 2017. Genesis Pabon is identified, by name but not PTIN, on 64 tax returns prepared in 2020; these tax returns also identify Salgado Tax and Notary Services LLC as the paid preparation firm. However, none of these tax returns properly report Pabon's PTIN, but instead they report a fabricated PTIN not affiliated with any other individual.

201.    A tax return preparer who fails to sign a tax return that he or she prepares violates 26 U.S.C. § 6695(b).  A tax return preparer, or employer of a tax return preparer, who fails to

report an identifying number of the tax return preparer or the employer on a tax return that the preparer or an employee prepares, violates 26 U.S.C. § 6695(c).

202. Failing to identify themselves as the paid preparers on tax returns is part of the Defendants' attempts to conceal their tax return preparation activities from government investigators.

## Harm Caused by the Defendants

203. The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the Defendants and many of their preparers prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

204. The Defendants' misconduct (and that of preparers acting at their direction or with their knowledge and consent) harms the United States Treasury by causing lost tax revenue.

205. The Defendants' customers have also been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

206. Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants, and those

acting at their direction or with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants, and those acting at their direction or with their knowledge and consent.

207.    The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting her false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers. Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

208.    The Defendants' misconduct also harms the United States and the public because the Defendants train other tax preparers, who have no previous tax return preparation experience, on how to prepare tax returns that make false or fraudulent claims. These Defendant-trained tax preparers, in turn, often open their own tax preparation stores using the Defendants' investments of the ill-gotten gains that the Defendants received for the preparation of tax returns, or using the income that the preparers received from the Defendants for the preparation of tax returns making false or fraudulent claims. In this manner, the preparation of false or fraudulent tax returns spreads like a wildfire.

209.    The Defendants' misconduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law.

Customers often have their returns prepared at the Defendants' tax preparation stores because they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

210.    Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

211.    The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers. An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

## Count I
## Injunction under 26 U.S.C. § 7407

212.    Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

      a.    Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains

an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

b.     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

c.     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

d.     Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

e.     Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

213.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

214.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, as shown above in paragraphs 5 through 211, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC also advise, instruct, direct, assist, and/or cause managers, preparers, and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and

fraudulent positions. Accordingly, Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

215.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal tax returns that understate their customers' liabilities based on unrealistic, frivolous and reckless positions. Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, through the actions described above, also recklessly or intentionally disregard IRS rules or regulations.

216.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and those acting in concert with them and at their direction, have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695. The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with

the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011). Not only do Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC fail to conduct proper due diligence or comply with the due diligence requirements, but they also advise, encourage, assist, and/or cause managers, preparers, and employees acting with their knowledge or consent to circumvent the due diligence requirements and to ignore or disregard the information provided by customers.

217.    Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard of IRS rules and regulations.

218.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and those acting in concert with them and at their direction, have continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and those acting

in concert with them and at their direction, have not conducted, let alone documented, the required due diligence procedures.

219.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC also fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

220.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer identify the actual paid preparer of the tax return.

221.    Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

222.    Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's continual and repeated fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws falls within 26 U.S.C. § 7407(b)(1)(D), and thus is subject to an injunction under 26 U.S.C. § 7407.

223.    If Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

224.    Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's interference with the proper administration of the internal revenue laws. Accordingly, Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC should be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

**Count II**
**Injunction under 26 U.S.C. § 7408**

225.     Section 7408 of the Internal Revenue Code authorizes a district court to enjoin

any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701

if injunctive relief is appropriate to prevent recurrence of such conduct.

226.     Section 6701(a) of the Internal Revenue Code penalizes any person who aids or

assists in, procures, or advises with respect to the preparation or presentation of a federal tax

return, refund claim, or other document knowing (or having reason to believe) that it will be used

in connection with any material matter arising under the internal revenue laws and knowing that

if it is so used it will result in an understatement of another person's tax liability. Under 26

U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate

to do an act," as well as "knowing of, and not attempting to prevent, participation by a

subordinate in an act."

227.     Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams,

Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions

LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin

Salgado LLC, through the actions detailed above in paragraphs 5 through 211, caused the

presentation and preparation of false, fraudulent, and abusive tax returns and other documents.

Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon,

Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax

and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC prepare,

assist, and/or advise with respect to the presentation and preparation of federal tax returns for

customers that they know will understate their correct tax liabilities, because Karina Salgado

Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado,

Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary

Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC knowingly prepare,

assist, and/or advise with respect to the presentation and preparation of returns claiming bogus

expenses and deductions. Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita

Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial

Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and

Jazmin Salgado LLC procured and assisted the preparation of false and fraudulent tax returns by

filing and encouraging the filing of tax returns they knew were false or fraudulent, and by

training and supervising tax return preparers engaging in tax fraud. Karina Salgado Williams,

Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax

and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC,

K&T Loyal Tax Services LLC, and Jazmin Salgado LLC have thus engaged in conduct subject

to a penalty under 26 U.S.C. § 6701.

228.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams,

Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions

LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin

Salgado LLC are likely to continue violating the law absent an injunction. Tax return preparation

is Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis

Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions

LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin

Salgado LLC's primary source of revenue. To maximize that income, Karina Salgado Williams,

Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax

and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC,

K&T Loyal Tax Services LLC, and Jazmin Salgado LLC prepare, and instruct and direct managers and preparers to prepare, fraudulent returns. That fraudulent conduct, in turn, gives Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC a competitive edge over law-abiding preparers. It also provides a means for Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to further exploit their customers by charging them unconscionably high fees, while Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's fraud simultaneously and callously exposes their customers to possible civil and criminal liability.

229.    If the Court does not enjoin Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, they are likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The preparation of tax returns claiming improper expenses and deductions by Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin

Salgado LLC, and those acting in concert with them and at their direction, is widespread over many customers and tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

230.    Section 7402 of the Internal Revenue Code authorizes a district court to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

231.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, through the actions described above in paragraphs 5 through 211, including, but not limited to, intentionally understating their customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

232.    Unless enjoined, Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and those acting in concert with them and at their direction, are likely to continue to engage in such improper conduct and interfere with the enforcement of the internal revenue laws. If Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC are not enjoined from engaging in fraudulent and deceptive conduct, the United

States will suffer irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

233.    While the United States will suffer irreparable injury if Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC are not enjoined, Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC will not be harmed by being compelled to obey the law.

234.    Enjoining Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's illegal conduct and the harm it causes the United States and the Defendants' customers.

235.    The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

236.    Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

237.    Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's conduct, described above in paragraphs 5 through 211, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them. Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

238.    Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

239.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and

Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to disgorge to the United States the ill-gotten gains (in the form of fees subtracted from customers' tax refunds) that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.     That the Court find that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.     That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC from acting as federal tax return preparers;

C.     That the Court find that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701,

and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

   D.  That the Court find that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

   E.  That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and all those in active concert or participation with them, from:

   (1) acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

   (2) preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

   (3) owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

   (4) training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)    maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6)    engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7)    engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.    That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to immediately and permanently close, because of the pervasive fraud, all tax return preparation stores that they own directly or through any other entity;

G.    That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC own directly or through any other entity;

H.    That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement,

independent contractor agreement, or employment contract related any tax return preparation business to which they or any entity under their control is a party, or has been a party since 2018;

I.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC from: (1) selling to any individual or entity a list of customers, or any other customer information, for whom Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and any other business or name through which Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, or those acting at their direction, have at any time since 2018 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, manager, tax return preparer, employee, or independent contractor of Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, or any other business through which Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC prepare tax returns or own or franchise a tax return preparation business, a list of

customers or any other customer information for customers for whom Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and any other business or name through which Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, or those acting at their direction, have at any time since 2018 prepared a tax return; and (3) selling to any individual or entity any proprietary information pertaining to any business or name through which Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, or those acting at their direction, have at any time since 2018 prepared a tax return;

J.      That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to disgorge to the United States the ill-gotten gains (the amount of which is to be determined by the Court) that Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC received (in the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that

make or report false and/or fraudulent claims, deductions, credits, income, expenses, or other information that results in the understatement of taxes, prepared since 2018 by Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and/or Jazmin Salgado LLC, and at any tax preparation store franchised, owned, or managed by Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC;

K.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to contact, within 30 days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and their managers, employees, and tax return preparers prepared federal tax returns or claims for a refund since 2018 and continuing through this litigation to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

L.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC, and their managers, employees, and tax return preparers prepared federal tax returns or claims for a refund since 2018 and continuing through this litigation;

M.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC from 2018 to the present;

N.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams,

Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC provided a copy of the Court's order;

     O.      That the Court retain jurisdiction over Karina Salgado Williams, Shaquivia Bivins, Shasha Cruz, Nikita Williams, Genesis Pabon, Jazmin Salgado, Salgado Tax and Repo LLC, United Tax Financial Solutions LLC, Salgado Tax and Notary Services LLC, K&T Loyal Tax Services LLC, and Jazmin Salgado LLC and over this action to enforce any permanent injunction entered against them;

     P.      That the United States be entitled to conduct discovery to monitor Karina Salgado Williams', Shaquivia Bivins', Shasha Cruz's, Nikita Williams', Genesis Pabon's, Jazmin Salgado's, Salgado Tax and Repo LLC's, United Tax Financial Solutions LLC's, Salgado Tax and Notary Services LLC's, K&T Loyal Tax Services LLC's, and Jazmin Salgado LLC's compliance with the terms of any permanent injunction entered against them; and

Q.  That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: January 8, 2021   MARIA CHAPA LOPEZ
           United States Attorney

           RICHARD E. ZUCKERMAN
           Principal Deputy Assistant Attorney General

            s/ Daniel A. Applegate
           DANIEL A. APPLEGATE
           SAMUEL P. ROBINS
           Trial Attorneys, Tax Division
           U.S. Department of Justice
           P.O. Box 7238, Ben Franklin Station
           Washington, D.C. 20044
           Telephone: (202) 353-8180
           Fax: (202) 514-6770
           daniel.a.applegate@usdoj.gov

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel A. Applegate, U.S. Dept. of Justice, 202-353-8180
P.O. Box 7238, Washington, D.C. 20044

### DEFENDANTS

KARINA SALGADO WILLIAMS; SHAQUIVIA BIVINS; SHASHA CRUZ; NIKITA WILLIAMS; GENESIS PABON; et

County of Residence of First Listed Defendant   Volusia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1   U.S. Government
        Plaintiff

[ ] 2   U.S. Government
        Defendant

[ ] 3   Federal Question
        *(U.S. Government Not a Party)*

[ ] 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [X] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1  Original Proceeding
[ ] 2  Removed from State Court
[ ] 3  Remanded from Appellate Court
[ ] 4  Reinstated or Reopened
[ ] 5  Transferred from Another District *(specify)*
[ ] 6  Multidistrict Litigation - Transfer
[ ] 8  Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. section 7407, 7408, and 7402(a)

Brief description of cause:
Suit to enjoin tax return preparers from preparing tax returns and owning or operating tax preparation business and to disgorge ill-gotten gains

### VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE  Mendoza          DOCKET NUMBER  6:18-cv-2148-Orl-41DCI

DATE                         SIGNATURE OF ATTORNEY OF RECORD
1/8/2021                     s/ Daniel A. Applegate

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Plaintiff(s)* ) | |
| v. ) | Civil Action No. |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

_____ .


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .


I declare under penalty of perjury that this information is true.


Date: _____            _____
                                              *Server's signature*

                                   _____
                                              *Printed name and title*

                                   _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify)*:

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ <br> *Plaintiff(s)* <br><br> v. <br><br><br> _____ <br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><i>Plaintiff(s)</i></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><i>Defendant(s)</i></td><td>)</td><td></td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*
.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Plaintiff(s)* ) | |
| v. ) | Civil Action No. |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
                                                                                            .


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  | ) |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

_____
*Plaintiff(s)*

v.                                                    Civil Action No.

_____
*Defendant(s)*

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*
.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: